**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Mary Ann Whipple
United States Bankruptcy Judge

Dated: January 29 2007

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 06-31086 |
| | ) | |
| Robert Zimmerman and | ) | Chapter 13 |
| Susan Zimmerman | ) | |
| | ) | |
| Debtors. | ) | JUDGE MARY ANN WHIPPLE |

### MEMORANDUM OF DECISION AND ORDER
### REGARDING OBJECTION TO CONFIRMATION OF DEBTORS' CHAPTER 13 PLAN

This case is before the court on the Chapter 13 Trustee's Objection to Confirmation of Debtors' Chapter 13 plan ("Trustee's Objection") [Doc. # 35]. The parties' arguments require the court to determine the proper method of calculating "projected disposable income" for the purpose of analyzing whether Chapter 13 debtors meet the confirmation standard of 11 U.S.C. § 1325(b)(1)(B), as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").

### BACKGROUND

Debtors filed a petition for relief under Chapter 13 of the Bankruptcy Code on May 13, 2006. Their case is therefore governed by the Bankruptcy Code as amended by BAPCPA, which became effective in relevant part to cases filed on or after October 17, 2005. Debtors filed amended Schedules I and J on October 25, 2006, along with their amended Chapter 13 plan. Their amended Schedule I shows combined gross monthly income in the amount of $4,941 and combined income after payroll deductions in the amount of $3,495. Their amended Schedule J shows total monthly expenses of $3,367, with monthly net income

of $128. In their amended Chapter 13 plan, Debtors propose to pay the Chapter 13 Trustee $125 per month for sixty months, which represents a 10.44% dividend to unsecured creditors.

Following the enactment of BAPCPA, Chapter 13 debtors are also required to file a Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income (Official Form B22C). Interim Fed. R. Bankr. P. 1007(b)(6); Second Amended Order No. 2005-11, United States District Court for the Northern District of Ohio. This form contains the calculations set forth in 11 U.S.C. § 707(b)(2) that are referred to as the "means test." All Chapter 13 debtors must complete Parts I and III of Form B22C to determine "current monthly income" as defined by BAPCPA. *Id.* Chapter 13 debtors with income greater than the median family income of the applicable state for a family of the same or fewer number of individuals must also complete Parts IV and VI of Form B22C, which include calculations of expense deductions allowed under § 707(b)(2), additional expense claims, and Part V, which indicates it is a "Determination of Disposable Income Under § 1325(b)(2)." *Id.*

Debtors filed an amended Form B22C on October 25, 2006. Their amended Form B22C shows that their income is above the median family income for a family their size in Ohio. The case record shows that they are seeking Chapter 13 relief because a Chapter 7 filing would be presumed to be an abuse under 11 U.S.C. § 707(b)(2). Debtors' amended plan does not propose to cure any defaults or pay any arrearages on secured debt; the claims register confirms that there are no such arrearages. The only issue in this case is thus how much Debtors have to pay their unsecured creditors to be entitled to a discharge under 11 U.S.C. § 1328. The means-test calculation on Part V of Form B22C shows monthly disposable income of $971. This calculation is based on certain allowed expenses deducted from "current monthly income," which is defined under BAPCPA as Debtors' average monthly income from all sources that Debtors receive during the 6-month period *prior to* filing their bankruptcy case. *See* 11 U.S.C. § 101(10A) (emphasis added). Under the means test, Debtors show current monthly income of $5,802 on Part I of Form B22C and total allowed deductions of $4,831 on Part IV of Form B22C. The parties also agree that an additional $200 deduction from income is appropriate under the means test based on the age of Debtors' vehicle. Thus, the means test calculation, as adjusted, shows monthly disposable income of $771, as compared to monthly net income of $128 shown on Debtors' amended Schedules I and J and the $125 per month they propose to pay under their amended plan.

The means test calculation, however, is based upon income that Debtors no longer receive. In addition to his regular full-time employment, Robert Zimmerman had been working a second job that he reports he no longer has. Thus, they assert that the means test calculation does not reflect actual disposable

2

income available to repay unsecured creditors. The question before the court is whether the court may consider only current monthly income as defined by BAPCPA or whether it may also consider a debtor's actual monthly income in determining the amount that a debtor must apply as payments under a Chapter 13 plan in order to overcome an objection under § 1325(b).

## LAW AND ANALYSIS

The Trustee's Objection requires the court to interpret § 1325(b), as amended by BAPCPA. In doing so, the starting point is the language of the statute itself. *Duncan v. Walker*, 533 U.S. 167, 172 (2001). "When the statute's language is plain, the sole function of the courts--at least where the disposition required by the text is not absurd--is to enforce it according to its terms." *Id.* (quoting *United States v. Ron Pair Enterprises*, Inc., 489 U.S. 235, 241 (1989)). However, in the "'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters' . . . the intention of the drafters, rather than the strict language, controls." *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242-243 (1989) (internal citations omitted). Moreover, when the statute's language is not clear, courts may resort to legislative history to ascertain its meaning. *United States v. Boucha,* 236 F.3d 768, 774 (6th Cir. 2001). In determining the clarity or ambiguity of statutory language, courts should not read a statute in isolation. "Statutory construction is a 'holistic endeavor.' 'A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme--because the same terminology is used elsewhere in a context that makes its meaning clear, or because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law.'" *Koons Buick Pontiac GMC, Inc. v. Nigh*, 543 U.S. 50, 60 (2004) (internal citations omitted); *see also Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997) ("The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole."). Finally, the court must avoid a construction that violates the established principle that "a court should "'give effect, if possible, to every clause and word of a statute,'" *Moskal v. United States,* 498 U.S. 103, 109 (1990) (internal citation omitted), and presume that "'Congress acts intentionally and purposely' when it 'includes particular language in one section of a statute but omits it in another,'" *Chicago v. Envtl. Def. Fund*, 511 U.S. 328, 338 (1994) (internal citation omitted). With these concepts in mind, the court turns to the issues raised by the parties' arguments.

Prior to BAPCPA, in order to overcome a trustee's objection to confirmation under § 1325(b), debtors were required to propose a plan that applied all of their projected disposable income to be received in the three-year period beginning on the due date of the first payment under the plan to make payments

3

under the plan. Pre-BAPCPA § 1325(b)(2) defined "disposable income" as income which is received by the debtor that is not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor. There was little or no confusion as to how projected disposable income was to be determined, since "projected disposable income" and "disposable income" were generally the same. A debtor's expenses, generally as set forth in Schedule J and subject only to a determination that they were reasonably necessary for the maintenance or support of the debtor or debtor's dependents, were subtracted from debtor's actual income, generally determined from figures set forth in Schedule I.

BAPCPA, however, amended § 1325(b) in a number of significant respects. That section now provides, in relevant part, as follows:

> (b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan–
> . . . .
> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.
>
> (2) For purposes of this subsection, the term "disposable income" means current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended–
> (A)(i) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed. . . .

11 U.S.C. § 1325(b)(1) and (2). In addition, if a debtor's income is above the median family income in his state for a family his size, § 1325(b)(3) directs that "[a]mounts reasonably necessary to be expended under paragraph (2) shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2)." These amendments have generated a great deal of confusion as well as a number of conflicting judicial opinions with respect to both the income and the expense components of determining "projected disposable income." However, the Trustee's Objection focuses on the income side of the equation only and, thus, the court does not address the proper calculation of expenses in this opinion.[1]

The confusion with respect to the income side of the analysis arises from Congress's use of forward-

---

[1] Nor does the court address the role of the requirement under § 1325(a)(3) that a plan be proposed in good faith in determining whether a debtor has committed sufficient income to repayment of his unsecured debt. At this point, good faith in proposing the plan has not been raised as an issue in dispute.

4

looking terms such as "projected" and "to be received" in § 1325(b)(1)(B) while defining "disposable income" in § 1325(b)(2) using the concept of "current monthly income" that is backward-looking as statutorily defined. As discussed above, "current monthly income," a new term under BAPCPA, is defined as debtors' average income over the last six months before filing their petition. 11 U.S.C. § 101(10)(A).[2] Thus, "disposable income" is calculated using historical income figures and subtracting, in the case of below-median-income debtors, current expenses, and in the case of above-median-income debtors, expenses as determined in accordance with § 707(b)(2)(A) and (B). This use of historical income results in a number that may have little or no relationship to reality as of the effective date of the plan. As one commentator noted, it contradicts the forward-looking language in § 1325(b)(1)(B), thus creating "interpretive difficulties." 8 Alan N. Resnick, et al., *Collier on Bankruptcy* ¶ 1325.08[5][a] (15th ed. 2005).

"Projected disposable income" will be substantially the same as "disposable income" in many cases since the debtor's actual income often is the same as his current monthly income. However, the proper calculation of "projected disposable income" becomes an issue, and in particular whether it is calculated using "current monthly income" or actual income, when the debtor's actual income has either substantially increased or decreased around the time of filing. Courts addressing the post-BAPCPA calculation of the income side of "projected disposable income," a term that is not defined in BAPCPA, have reached different conclusions, although they all aver that they rely on the plain meaning of the statute in doing so. *Compare In re Alexander*, 344 B.R. 742, 749 (Bankr. E.D.N.C. 2006) (equating "projected disposable income" with

---

[2] Section 101(10A) provides as follows:
The term "current monthly income"–
(A) means the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income, derived during the 6-month period ending on–

    (i) the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income required by section 521(a)(1)(B)(ii); or

    (ii) the date on which current income is determined by the court for purposes of this title if the debtor does not file the schedule of current income required by section 521(a)(1)(B)(ii); and

(B) includes any amount paid by any entity other than the debtor (or in a joint case the debtor and the debtor's spouse), on a regular basis for the household expenses of the debtor or the debtor's dependents (and in a joint case the debtor's spouse if not otherwise a dependent), but excludes benefits received under the Social Security Act, payments to victims of war crimes or crimes against humanity on account of their status as victims of such crimes, and payments to victims of international terrorism (as defined in section 2331 of title 18) or domestic terrorism (as defined in section 2331 of title 18) on account of their status as victims of such terrorism.

11 U.S.C. § 101(10A).

"disposable income" and finding that, "in order to arrive at 'projected disposable income,' one simply takes the calculation mandated by § 1325(b)(2) and does the math'"), *and In re Girodes*, 350 B.R. 31, 36 (Bankr. M.D.N.C. 2006) (rejecting the trustee's argument that the debtor should be required to commit her actual disposable income to her Chapter 13 plan rather than the artificial sum obtained using current monthly income and finding that, although the argument "is very logical, it is not what BAPCPA states"), *with In re Hardacre*, 338 B.R. 718, 722 (Bankr. N.D. Tex. 2006) (concluding that "projected disposable income" must be based on debtor's actual income anticipated during the term of the plan rather than on an average of her prepetition income), *and In re Jass*, 340 B.R. 411, 415-16 (Bankr. D. Utah 2006) (finding the language of § 1325(b)(1)(B) clear and unambiguous and concluding that "disposable income" as calculated by Form B22C is not the same as "projected disposable income"). Courts on both sides of the issue acknowledge the anomalous results that could occur if "projected disposable income" is defined in terms of "current monthly income" rather than income actually anticipated to be received by the debtor during the life of the Chapter 13 plan. *See, e.g., Alexander*, 344 B.R. at 746-47 (recognizing that a debtor who may have had disposable income under the old law may have little or no disposable income under such a definition); *Hardacre*, 338 B.R. at 722 (explaining that a debtor who anticipates a significant enhancement of future income is provided strong incentive to file Chapter 13 as soon as possible since the amount of money she would be required to commit to the plan would be based on her lower average prepetition income, but a debtor who is in the unfortunate circumstance of having a lower income at the time of filing her petition could be unable to confirm a plan because she cannot devote to the plan an amount predicated upon her prepetition income).

In *Alexander*, the court concluded that "projected disposable income" in § 1325(b)(1) is determined by calculating "disposable income" as set forth in § 1325(b)(2). *Alexander*, 344 B.R. at 749. It noted that "projected disposable income" is a term pre-dating BAPCPA and has traditionally been calculated in accordance with the statutory definition of "disposable income." *Id.* Because both "projected disposable income" and "disposable income" are found in subsection 1325(b), and because § 1325(b)(2) defines "disposable income" "[f]or purposes of this subsection," the court stated that "[i]f 'disposable income' is not linked to 'projected disposable income' then it is just a floating definition with no apparent purpose." *Id; see In re Kagenveama*, 2006 Bankr. LEXIS 2759, *5 (Bankr. D. Ariz. July 10, 2006) (agreeing with *Alexander* and noting that "nowhere else, other than in Section 1325(b)(1)(B), do the words 'disposable income' appear in the referenced subsection"); *In re Tranmer*, 2006 Bankr. LEXIS 3150, *19-20 (Bankr. D. Mont. Nov. 16, 2006) (agreeing with *Alexander* and finding that such construction "gives effect to 'disposable income' in both § 1325(b)(1)(B) and § 1325(b)(2) in the manner which avoids rendering one

6

superfluous"). While the pre-BAPCPA determination of "projected disposable income" was a forward-looking concept in application, the court concluded that "it has been 'transformed by new § 1325(b)(2).'" *Alexander*, 344 B.R. at 748; *see Girodes*, 350 B.R. at 36 (agreeing that "projected disposable income" and "disposable income" are one and the same and finding that the pre-BAPCPA practice of looking to Schedules I and J to determine the amount the debtor should commit to a plan is no longer valid under BAPCPA); *In re Rotunda*, 349 B.R. 324, 329-31 (Bankr. N.D.N.Y. 2006) (finding that "projecting disposable income based on an average of six months' income after certain standard deductions and payment on secured and priority debt is no less realistic than the figures used in Schedules I and J for purposes of proposing a feasible plan" and concluding that, '[i]n enacting BAPCPA, Congress demonstrated a determination to replace judicial discretion under general standards with precise rules-based calculations"); *In re Hanks*, – B.R. –, 2007 Bankr. LEXIS 46 (Bankr. D. Utah Jan. 9, 2007) (agreeing with *Alexander* and rejecting various policy arguments to the contrary).

While *Alexander* and its progeny focus on giving a purpose and meaning to the definition of "disposable income" found in § 1325(b)(2), other courts have focused on the meaning of statutory language found in § 1325(b)(1)(B) and have reached an opposite conclusion, that is, that the income side of the equation for "projected disposable income" is not based solely on a debtor's current monthly income. *See, e.g., Hardacre,* 338 B.R. 718 (Bankr. N.D. Tex. 2006); *Jass*, 340 B.R. 411 (Bankr. D. Utah 2006); *In re Kibbe*, 342 B.R. 411 (Bankr. D.N.H. 2006); *In re Grady*, 343 B.R. 747 (Bankr. N.D. Ga. 2006); *In re Risher*, 344 B.R. 833 (Bankr. W.D. Ky. 2006); *In re Demonica*, 345 B.R. 895 (Bankr. N.D. Ill. 2006); *In re Fuller*, 346 B.R. 472 (Bankr. S.D. Ill. 2006); *In re Balcerowski*, 353 B.R. 581 (Bankr. E.D. Wis. 2006); *In re Wayman*, 351 B.R. 808 (Bankr. E.D. Tex. 2006); *In re Foster*, 2006 Bankr. LEXIS 2259 (Bankr. N.D. Ind. Sept. 11, 2006).

In *Hardacre*, the first opinion to address the issue, the court held that "'projected disposable income' must be based upon the debtor's anticipated income during the term of the plan, not merely an average of her prepetition income." *Hardacre*, 338 B.R. at 722. The court found that § 1325(b)(1) "commands such a construction." *Id.* The court based its holding on several grounds. First, it presumed Congress acted intentionally and purposely when it continued to use the phrase "projected disposable income" in § 1325(b)(1)(B), rather than using the term "disposable income" and invoking the definition set forth in § 1325(b)(2). *Id.* at 723. Second, the court observed that § 1325(b)(1)(B) refers to the projected disposable income "*to be received* in the applicable commitment period." It concluded that this forward-looking language would be superfluous if Congress intended "projected disposable income" to be based solely on

7

prepetition average income. *Id.* Finally, the court focused on language in § 1325(b)(1) that requires the court to determine whether a debtor is committing all of his projected disposable income "*as of the effective date of the plan*"[3] and concluded that such language indicates that income as of the effective date of the plan is the income relevant to calculating projected disposable income, not income received prepetition. *Id.* The court found its conclusion buttressed by the anomalous results that could occur "by strictly adhering to section 101(10A)'s definition of 'current monthly income.'" *Id.* at 722. The court cautioned, however, that § 101(10A) "continues to apply inasmuch as it describes the sources of revenue that constitute income, as well as those that do not." *Id.* at 723.

In concluding that "projected disposable income" must be based on a debtor's anticipated income during the term of the plan, and not merely an average of prepetition income, courts have also considered the fact that viewing "projected disposable income" as a forward-looking concept is consistent with and promotes both the fresh start policy of the Bankruptcy Code and the "very clear goal of BAPCPA to channel more debtors into Chapter 13 repayment plans." *Grady*, 343 B.R. at 751-52; *see also Jass*, 340 B.R. at 417. *But see Hanks*, 2007 Bankr. LEXIS 46 at *16- 22. Basing plan payments on anticipated income allows debtors to propose a plan that they can most realistically complete within the applicable commitment period. *Grady*, 343 B.R. at 751. Courts have also found that it furthers the very purpose of the § 1325(b)(1)(B) requirement that debtors commit all of their "projected disposable income" to a plan, that is, to ensure that debtors pay as much as possible each month over the life of the plan. *See Fuller*, 346 B.R. at 483; *Foster*, 2006 Bankr. LEXIS 2259 at *16. Finally, courts have also found the forward-looking concept consistent with the flexibility provided in §§ 1323 and 1329 that assists debtors in completing their plans by allowing for certain modifications of a plan upon a change of financial circumstances. *See Grady*, 343 B.R. at 752; *Risher*, 344 B.R. at 837.

In summary, even though courts addressing the calculation of "projected disposable income" have virtually all opined that the language of the statute is plain and unambiguous, there is no clear consensus concerning the meaning of the word "projected" as used in the amended statute. Two broad lines of authority have evolved – one, exemplified in *Alexander*, concluding that "projected disposable income" is based only on historical "current monthly income" and the other, exemplified in *Hardacre*, concluding that "projected disposable income" is a forward-looking concept that requires a court to consider actual current income. This court declines to follow the reasoning in *Alexander*, finding such reasoning unpersuasive in that it fails to

---

[3] Similarly, § 1325(b)(1)(B) refers to projected disposable income to be received in the applicable commitment period "*beginning on the date that the first payment is due under the plan.*" 11 U.S.C. § 1325(b)(1)(B).

8

give any meaning or effect at all to the terms "projected" and "to be received in the applicable commitment period" found in § 1325(b)(1)(B). Instead, the court finds the reasoning in *Hardacre* and its progeny persuasive and concludes that "projected disposable income" is a forward-looking concept that is not synonymous with "disposable income" as defined in § 1325(b)(2). The language in § 1325(b)(1)(B), read together with other provisions of the Bankruptcy Code, leads the court to this conclusion. It makes little sense for Congress to include in the Bankruptcy Code the flexibility provided by §§ 1323 and 1329 permitting modification of a plan when a debtor's financial circumstances change, thus assisting both debtors in completing their plans when their circumstances change for the worse and creditors in obtaining increased payments when a debtor's circumstances improve, but not to provide for a realistic determination of the debtor's ability to make payments in the first place.[4] The court's conclusion is also consistent with Congress' clear intent in passing consumer bankruptcy reforms, which was "to ensure that debtors repay creditors the maximum they can afford." H.R. Rep. No. 109-31, Pt. 1, at 2 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 88, 89. The statutory interpretation set forth in *Alexander* and its progeny conflicts with this goal.

Having concluded that "projected disposable income" is not determined simply by subtracting applicable expenses from "current monthly income," the court must next address how "projected disposable income" is to be calculated, at least with respect to the income side of the equation. Courts embracing the forward-looking analysis have employed different methods in making this calculation.

Some courts have simply concluded that income reported on Schedule I should be used in calculating "projected disposable income." *See Demonica*, 345 B.R. at 900 ("a debtor's Schedule I, which reflects current income as opposed to a historical average, should be used"); *Fuller*, 346 B.R. at 485 ("whether a debtor is above or below the median income, parties must determine 'projected disposable income' by looking at Schedule I to determine the debtor's income at the date the petition was filed"); *Kibbe*, 342 B.R. at 414 ("[D]isposable income in the instant case is determined by reference to Schedules I and J."); *Balcerowski*, 353 B.R. at 590 (requiring trustee to "look at the amount that results when one subtracts the debtor's actual tax expense (and other expenses) from, his Schedule I income."). Other courts use "current monthly income" as a starting point but permit that figure to be adjusted where it is demonstrated that a debtor's financial circumstances have changed. *See Jass*, 340 B.R. at 418-19; *Wayman*, 351 B.R. at 811, n. 7; *Foster*, 2006 Bankr. LEXIS 2259 at *21-22.

In *Jass*, the court held that the number resulting from Form B22C, which incorporates the historical

---

[4] The *Hardacre* reasoning is also consistent with the ability of the Trustee or "any party in interest" to require debtors in a Chapter 13 case to file copies of their federal income tax returns annually until the case is closed. *See* 11 U.S.C. § 521(f)(4).

9

current monthly income calculation, will always be the starting point in determining "projected disposable income" and that the court will presume that number is the debtor's projected disposable income "unless the debtor can show that there has been a substantial change in circumstances such that the numbers contained in Form B22C are not commensurate with a fair projection of the debtor's budget in the future." *Jass*, 340 B.R. at 418. The court looked to the analysis required under § 707(b)(2)(B) for guidance in determining whether a debtor has met his or her burden to show a substantial change in circumstances and concluded that a debtor must present documentation similar to that required by § 707(b)(2)(B). *Id.*

Section 707(b)(2)(B)(i) allows a debtor to rebut a presumption of abuse in filing a Chapter 7 petition where the debtor can demonstrate "special circumstances" to the extent such circumstances justify additional expenses or adjustments of current monthly income "for which there is no reasonable alternative." The statute further provides, in relevant part, as follows:

> (ii) In order to establish special circumstances, the debtor shall be required to itemize each additional expense or adjustment of income and to provide--
>
> > (I) documentation for such expense or adjustment to income; and
> >
> > (II) a detailed explanation of the special circumstances that make such expenses or adjustment to income necessary and reasonable.
>
> (iii) The debtor shall attest under oath to the accuracy of any information provided to demonstrate that additional expenses or adjustments to income are required.

11 U.S.C. § 707(b)(2)B)(ii) and (iii).

The *Jass* court then explained the procedure it would follow if it finds adequate evidence to rebut the presumption created by the Form B22C calculations:

> [T]he Court will allow the debtor to use a projected budget in the form of Schedules I and J to determine the debtor's "projected disposable income." For purposes of § 1325(b)(1)(B), the Court will then require the debtor to propose a plan to return to unsecured creditors an amount consistent with those schedules.

*Jass*, 340 B.R. at 418-19. The court cautioned that it expected "only in rare instances" to confirm a Chapter 13 plan where the projected disposable income does not conform to the calculations on Form B22C and that "[a]s a general rule, Debtors should not expect the bottom line determined from Schedules I and J to trump the calculations of a properly completed Form B22C." *Id.* at 419.

Although *Jass* addressed both the income and expense components of "projected disposable income," with some modification, the court finds that approach a valid method as it relates to the income side of the equation, which is the only aspect of the calculation the court addresses in this opinion. Thus, in determining

10

a debtor's projected income to be received during the term of the Chapter 13 plan, the court will first look at debtor's "current monthly income" as defined in § 101(10A) and as limited in § 1325(b)(2).[5] The court will presume that figure is the income projected to be received by the debtor during the term of the Chapter 13 plan unless the debtor, the trustee, or an unsecured creditor who has objected to confirmation of the plan can show that a substantial change in circumstances exists such that the court may conclude that the presumed figure does not reasonably project debtor's income in the future. A party attempting to justify an adjustment to the presumed figure should present documentation similar to that required by § 707(b)(2)(B).

In determining whether an adjustment is warranted where a debtor's income on Schedule I is substantially less than his or her current monthly income, the court must consider what it views as an expression of Congress' intent embodied in the concept of "current monthly income." In determining a debtor's ability to pay, Congress chose to incorporate into the Chapter 13 process an average over time rather than just a snapshot view of debtor's income, presumably with the intent to provide a more realistic view of a debtor's financial condition one way or another. Thus, the court will not simply rely on Schedule I, which constitutes such a snapshot view. Rather, a debtor must not only present documentation that his or her income has substantially decreased, but that the decrease is due to circumstances that the debtor demonstrates will continue during the term of the Chapter 13 plan. This approach will address concerns that a snapshot view might otherwise avoid. For example, a debtor may have income that is seasonal or that normally fluctuates over time or a debtor may have intentionally caused the decrease in income in order to manipulate the Chapter 13 process, the latter circumstance being one that might also implicate the § 1325(a)(3) requirement of good faith in proposing a plan.

The court believes that its construction of § 1325(b) gives effect to all of the language in that section, both the forward-looking language of § 1325(b)(1)(B) and the definition of "disposable income" in § 1325(b)(2), in a manner that also is in harmony not only with the "fresh start" policy of the Bankruptcy Code but also with the clear goal of consumer bankruptcy reform in BAPCPA, that is, "to ensure that debtors repay creditors the maximum they can afford." H.R. Rep. No. 109-31, Pt. 1, at 2 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 88, 89.

At this time, the record before the court is insufficient to determine whether an adjustment to current monthly income is warranted. The court will not rule on the Trustee's Objection at this time so that the

---

[5] Section 1325(b)(2) excludes from the current monthly income calculation any "child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child."

11

parties may consider the method the court will employ in calculating "projected disposable income." To the extent the Trustee is satisfied that Debtors have sufficiently demonstrated a change in circumstances justifying an adjustment to their "current monthly income," he may withdraw his Objection. Otherwise, the court will hold an evidentiary hearing on the Objection.

**THEREFORE**, for the foregoing reasons, good cause appearing,

**IT IS ORDERED** that the court will hold an evidentiary hearing on confirmation of Debtors' amended plan [Doc. #34] and the Chapter 13 Trustee's Objection to Confirmation of Debtors' Chapter 13 Plan [Doc. # 35] on **Wednesday February 14, 2007, at 3:00 o'clock p.m.** in Courtroom No. 2, Room 103, United States Courthouse, 1716 Spielbusch Avenue, Toledo, Ohio.